UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL WILLIAMS,

    Plaintiff,

v.

Captain G. LEWIS; Lieutenant J. J. HUGHES, badge no. 49316; Sergeant E. MOORE, badge no. 54056; Officer K. PHAM, badge no. 55828; Officer MARQUEZ; laundry staff R. DOMINGO, id no. 2863454; and LVN M. GARCIA,

    Defendants.

    /

No. C 06-0832 PJH (PR)

**ORDER RULING ON PENDING MOTIONS AND GRANTING MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

    This is a civil rights case filed pro se by a state prisoner. Plaintiff contends that defendants Hughes, Moore, Pham and Lewis were deliberately indifferent to his safety at the time of a riot at the prison, resulting in his suffering stab wounds, and that Garcia and Marquez failed to provide treatment for his wounds. The claim against Domingo was dismissed with prejudice in the initial review order.

    Defendants Hughes, Pham, and Lewis have moved for summary judgment and, in a motion combined with their summary judgment motion, Garcia and Marquez have moved to dismiss the claims against them for failure to exhaust. Defendant Moore has filed a separate motion for summary judgment. Plaintiff has opposed the motions and filed several motions of his own. For the reasons set out below, the dispositive motions will be granted.

**DISCUSSION**

**A.   Nondispositive Motions**

    Plaintiff has moved to amend the caption to show defendant Moore's correct initial,

which is "E" rather than "C." The motion will be granted.

Plaintiff's motion to compel will be denied because he has not provided the certificate required by Rule 37(a)(1), nor has he requested a waiver of that provision. Given that some inmates have been able to comply with this requirement, the court will not presume that plaintiff cannot. The "Motion in Opposition" to the motion to compel filed by defendants Hughes, Lewis and Pham is not actually a motion, but rather is an opposition. To the extent it is a motion, it will be denied as unnecessary.

Plaintiff has filed a motion for leave to file an amended complaint and attached the proposed amended complaint. He does not need leave to amend because this is his first amendment and no responsive pleading has been filed. *See* Fed. R.Civ.P. 15(a). The motion will be denied as unnecessary and the amended complaint will be deemed timely filed.

Defendants Hughes, Lewis and Pham have requested that the court screen the amended complaint. The motion will be granted.

In the original complaint plaintiff had alleged that he was held in a holding cage, standing upright and only partly clothed, for fifteen hours, and that defendant Marquez saw this but did nothing. Plaintiff makes only two small changes in the amendment; one is to add on page VIII a conclusory statement that defendants Lewis, Hughes and Moore, who are supervisors, "used excessive force in the unnecessarily excessive and cruel and unusual use of the holding cage on Plaintiff," and the other is to add in the "Relief" section a contention that defendants use of excessive force is one basis for awarding damages. He does not allege any facts linking Lewis, Hughes and Moore to the holding cage incident, for instance that they ordered that he be kept there for fifteen hours or that they physically placed him in the cage while using unnecessary physical force. As a result he has failed to state an Eighth Amendment claim against them for the holding cage incident, and that claim will be dismissed. The change to the "Relief" section to add excessive force as a reason to award damages does not add a claim, so will not be reviewed. In short, the amendment has not changed the complaint.

2

**B.    Dispositive Motions**

    **1.    Motion to Dismiss of Defendants Garcia and Marquez**

Defendants Garcia and Marquez contend that the claim against them for deliberate indifference to a serious medical need must be dismissed because plaintiff did not exhaust his administrative remedies as to that claim.

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v Nussle*, 122 S. Ct. 983, 988 (2002). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v Churner*, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 122 S. Ct. at 992.

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *See id.* § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A final decision at the director's level satisfies the exhaustion

requirement under § 1997e(a). *Id.* at 1237-38.

Nonexhaustion under § 1997e(a) is an affirmative defense. *Wyatt v Terhune*, 315 F.3d 1108, 1119 (9th Cir 2003). It should be treated as a matter of abatement and brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." *Id.* (citations omitted). In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the court concludes that the prisoner has not exhausted California's prison administrative process, the proper remedy is dismissal without prejudice. *Id.* at 1120.

Garcia and Marquez have established that plaintiff did not administratively appeal his medical care claim through the third and final level, and he does not dispute this. He claims, however, that one grievance he submitted to the informal level at the time of the incident, on January 30, 2005, was never answered, and that two other grievances, one filed on May 4, 2005, and one on June 19, 2005, were screened out as untimely. Pl. Opp. at 5-8.

The grievances submitted in May and June were indeed untimely, given that inmate grievances must be filed within fifteen days of the event giving rise to them, *see* Cal. Code Regs. tit. 15 § 3084.6(c), and thus were not sufficient to exhaust, *see Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." (footnote omitted)).

The remaining question is whether the grievance allegedly ignored at the informal level was sufficient to exhaust. Plaintiff asserts that the lack of a response at the informal level prevented him from proceeding further with his grievance, and thus that no more administrative remedies were "available," but he is incorrect. The regulations do provide that a prisoner filing an administrative appeal must "attempt" to submit his grievance to "involved staff" at the informal level, but that regulation also says this is subject to the

exceptions in sections 3084.5(a)(3) and 3084.7.  Cal. Code Regs. tit. 15, § 3084.2(b).  Section 3084.5(a)(3)(F) allows for the situation where a prisoner is unable to get an answer at the informal level by providing that the Appeals Coordinator can waive the informal response requirement for "any action which the appeals coordinator determines cannot be resolved informally," *id.* at 3084.5(a)(3).

Plaintiff does not allege that he asked the Appeals Coordinator to waive the informal-level requirement, and thus failed to avail himself of an administrative remedy that was "available" to him.  The motion to dismiss for failure to exhaust of defendants Garcia and Marquez will be granted.

### 2. Summary Judgment Motions

Defendants Pham, Hughes and Lewis have moved for summary judgment, and defendant Moore has filed a separate motion for summary judgment.

#### a. Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

### b. Facts

The following facts are undisputed.

Defendant Lewis was the Facility Captain of D facility and defendant Hughes was the Program Lieutenant of D facility at the time of the events which gave rise to this case. Defendant Pham was the Observation Officer on the D-facility yard. Defendant Moore was "#2 Sergeant" on D Facility. Decl. Moore at ¶ 2.

On January 28, 2005, an inmate whose race was "other" stabbed an inmate classified as "white" in the D-facility laundry area. Inmates classified as "other" are usually Asian, Pacific Islander, or American Indian. The laundry area is separated from the exercise yard, where plaintiff was, by a concrete wall. An alarm was sounded as a result of the stabbing, which caused correctional officer Pham to order all of the inmates in the yard to "get down," meaning to lie prone on the ground. Hughes arrived at the laundry room first and ordered that all the inmates in the laundry and patio area be handcuffed and returned to their cells. Decl. Hughes ¶ 6. Defendant Lewis then arrived and, concerned that the racial implications of the assault might lead to acts of reprisal, ordered Hughes to recall the yard by race. *Id.*

Shortly after the inmates in the yard had complied with the order to "get down," sergeant Moore told Pham to "resume normal yard," which he did. Decl. Hughes ¶ 7; decl. Pham ¶ 6. Hughes and Lewis did not know that normal yard had been resumed. Decl. Hughes ¶ 7; decl. Lewis ¶ 7.

Three "other" inmates who were being escorted from the patio area outside the laundry area back to their housing unit were taken across the yard. While being escorted across the yard, one of the inmates said something in his own language to a group of "other" inmates. Shortly after the escort passed, a group of "other" inmates attacked the white inmates on the yard with weapons. The combatants refused several orders to stop. Plaintiff Williams, who is classified as white, was injured in the riot.

### c. Motion for Summary Judgment of Defendant Pham

In his opposition, plaintiff concedes that he is unable to counter the motion for

6

1 summary judgment as to Pham.  Because the papers supplied in support of the motion for
2 summary judgment do not reveal a genuine issue of material fact on their face, and do
3 show that Pham is entitled to summary judgment, his motion will be granted.  *See United*
4 *States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (court may
5 grant an unopposed motion for summary judgment if the movant's papers are themselves
6 sufficient to support the motion and do not on their face reveal a genuine issue of material
7 fact).

### d. Motion for Summary Judgment of Defendants Hughes and Lewis

Defendants Hughes and Lewis move for summary judgment on the grounds that there is no genuine issue of material fact that they were not deliberately indifferent to plaintiff's safety.  Their request for the court to take judicial notice of *Wood v. Hughes*, No. C 05-4332 MHP (PR) (Order Mar. 20, 2007), in which summary judgment was granted for Hughes and others on a safety claim arising out of the same riot, will be granted.

Plaintiff's claim against Hughes and Lewis is that they were deliberately indifferent to his safety by allowing or causing the "other" inmates to be taken across the yard, where they could tell their friends to attack the white inmates.

The Eighth Amendment imposes the duty upon prison officials to provide all prisoners with the basic necessities of life, including personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind.  *Id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294 at 297- 98 (1991)).  Here movants contend that there is no genuine issue of material fact as to the second prong.

The necessary state of mind for the second *Farmer* prong is one of "deliberate indifference."  *Id.*  Neither negligence nor gross negligence constitutes deliberate indifference.  *Farmer*, 511 U.S. at 835-36 & n.4.  Plaintiff must show that the standard for criminal recklessness is met, i.e., the official knew of and disregarded an excessive risk to inmate health or safety.  *Id.* at 837.  The official must both be aware of facts from which the

7

inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw the inference. *Id.* An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842.

There is no dispute as to the facts with respect to Hughes. He knew that when the alarm sounded because of the laundry stabbing, the inmates on the yard would have gone to the ground. Because he did not know that Sergeant Moore had ordered resumption of normal yard activities, he assumed they were still in that position when he ordered that the handcuffed inmates who were involved in the laundry fracas be escorted to their cells. Decl. Hughes ¶ 7. When he heard shots in the yard he ran there and took command to subdue the riot. *Id.* at ¶ 8-9.

Plaintiff's argument as to Hughes is unclear, Pl.'s Opp'n to Mot. for Summ. J. (Hughes, Lewis and Pham) at 21-22, but he appears to be arguing that based on Moore's incident report, Hughes told Moore (possibly by radio, as that is how a previous order to Moore had been transmitted) to recall the yard before the riot broke out, *id.* at ex. H. It is true that the declaration from Hughes does not mention his having been told by Lewis to recall the yard or his having passed that order on to Moore, whereas the incident report says that Hughes ordered Moore to recall the yard and Lewis' declaration says that Lewis ordered Hughes to have the yard recalled. *See id.*; decl. Lewis ¶ 6. None of this, however, generates a genuine issue of material fact, because it is not inconsistent for Hughes to have ordered recall of the yard and still have been unaware that normal yard activities had been resumed at the time he ordered that the "other" inmates be escorted to their cells. Summary judgment will be granted to Hughes.

Captain Lewis says that when he heard the alarm for the laundry incident he went there immediately, saw that the incident might have racial implications, and ordered Hughes to recall the yard by race. Decl. Lewis ¶ ¶ 5-6. He then "returned to my office." *Id.* at ¶ 6. On his way to his office he heard the announcement for the yard to resume normal

8

activity, which was not consistent with his order to recall the yard, and "[s]hortly after hearing the announcement for yard to resume," heard the "get down" order and the alarm occasioned by the riot. *Id.* at ¶ 8. He rushed to the yard and spoke with Hughes. *Id.* at 9.

Plaintiff's argument as to Captain Lewis is that there is a genuine issue of material fact as to how long Lewis was in his office after he heard the announcement that normal activities could be resumed on the yard and the announcement ordering the inmates to again get down because of the riot. Pl.'s Opp'n at 12-13. As he points out, Pham's incident report says there was about five minutes between his announcing that normal yard could resume and his order to recall the yard. *Id.* at ex. F. Plaintiff's argument is that this is inconsistent with Lewis' declaration that he heard the order to get down on the yard "shortly" after the order for yard to resume – the implication, plaintiff says, that Lewis had enough time after hearing that normal yard was resuming to do something about it, to the benefit of plaintiff's safety.

There is not a genuine issue of material fact. "Shortly" and "five minutes" are not inconsistent, particularly given the dramatic circumstances, the dangerous and chaotic situation that ensued, and the inevitable confusion of memory. Furthermore, taking five minutes as the correct interval, Captain Lewis' failure to act for that brief time could not amount to "criminal recklessness." *See Farmer*, 511 U.S. at 837 (defining "deliberate indifference"). Summary judgment will be granted for Lewis.

### e. **Motion for Summary Judgment of Defendant Moore**

Defendant Moore has filed a separate motion for summary judgment.

After the incident in the laundry room was under control, Sergeant Moore ordered that normal yard resume. Decl. Moore ¶ 2. Moore did this because the initial investigation indicated that the situation was under control, that weapons were not involved, and that the incident did not appear to be racial. *Id.* ¶ 2-3. Moore learned that a weapon had been involved only after he had approved resumption of normal yard activities. *Id.* at ¶ 4. He "promptly met with the available yard staff and informed them about the incident in the laundry room. [He] directed the staff to pay close attention to the inmates that align

9

themselves with the "Others" and "Whites . . . ."  He then ordered defendant Pham to recall the yard.  Decl. Kenny at ex. 3 (Moore's incident report).   Moore asserts that there is no genuine issue of material fact going to whether he was deliberately indifferent to plaintiff's safety, and that as a matter of law he was not.

Plaintiff's argument is that Moore was deliberately indifferent in ordering resumption of normal yard activities after the laundry incident.  Pl.'s Opp. to Mot. Summ. J. (Moore) 4-5. He claims to refute Moore's explanations as why he thought that this was appropriate. *Id.* at 5.  His refutations are, however, insufficient to generate a genuine issue of material fact.  For instance, he contends that Moore's claim to have been unaware that a weapon was involved when he allowed resumption of yard is refuted by a civilian laundry worker's statement that he saw an "object" in the hand of one of the combatants.  This does not, however, have any relevance to what Moore knew, because there is no evidence that the laundry worker told him.  It also does not prove that Moore knew there were weapons involved that he told another officer to search for weapons, or that a weapon was found "prior to the riot."  The point is what Moore knew when he ordered resumption of the yard, not what he knew at the time the riot broke out; this is also true as to the actions by Lewis and Hughes to recall the yard, which were taken after resumption of normal activity.

It may be that Moore was careless in ordering resumption of yard activities.  Still, given his knowledge at the time, doing so did not amount to deliberate indifference.  The motion for summary judgment will be granted.

**CONCLUSION**

1. Plaintiff's motion to correct the caption (document number 19 on the docket) is **GRANTED**.  The correct caption is the one used on this order.  Plaintiff's motion to compel (document 23) is **DENIED**.  His motion for leave to amend (document 29) is **DENIED** as unnecessary.

2. Defendants' request for judicial notice (document 58) and their motion to screen the amended complaint (document 30) are **GRANTED**.  The conclusory claim in the amended complaint against Lewis, Hughes and Moore for the holding cage incident is

**DISMISSED** for failure to state a claim.  Plaintiff's motion in opposition to the motion to compel (document 24) is **DENIED**.

3.  The motion to dismiss of defendants Garcia and Marquez (document 42) is **GRANTED**.  The motion for summary judgment by Moore (document 37) and that by Lewis, Hughes, and Pham (document 42) are **GRANTED**.

4.  These rulings dispose of all claims and terminate all pending motions.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 28, 2008.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.06\WILLIAMS832.MDISMISS.wpd